# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

National Alliance to End Homelessness; National Low Income Housing Coalition; Crossroads Rhode Island; Youth Pride, Inc.; City of Boston; City of Cambridge; Martin Luther King, Jr. County; Metropolitan Government of Nashville & Davidson County; County of Santa Clara; City and County of San Francisco; City of Tucson,

*Plaintiffs-Appellees*,

v.

United States Department of Housing and Urban Development; Scott Turner, in the official capacity as Secretary of the United States Department of Housing and Urban Development,

*Defendants-Appellants.*

On Appeal from the
United States District Court for the District of Rhode Island
Case No. 25-cv-636, Hon. Mary S. McElroy

## Plaintiffs-Appellees' Opposition to
## Emergency Motion for Stay Pending Appeal

Amy R. Romero
Kevin Love Hubbard
Cooperating counsel, Lawyers' Committee
  for RI
DeLuca, Weizenbaum, Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
amy@dwbrlaw.com

Kristin Bateman
Simon C. Brewer
Madeline H. Gitomer
Carrie Y. Flaxman
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org

*(additional counsel on signature page)*

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the nongovernmental Plaintiffs-Appellees report that they have no parent corporations, and that no publicly held corporation holds a 10% or greater ownership interest in any Plaintiff.

**TABLE OF CONTENTS**

Table of Authorities.................................................................................. iii

Introduction ..............................................................................................1

Statement...................................................................................................4

Legal Standard .......................................................................................11

Argument.................................................................................................11

I.     HUD Is Unlikely To Succeed on Appeal ..........................................12

      A.    The 2026 Appropriations Act does not undermine Plaintiffs' likelihood of success ................................................................13

      B.    The 2026 Appropriations Act does not resolve Plaintiffs' irreparable harm ......................................................................15

      C.    The 2026 Appropriations Act does not shift the balance of equities.........................................................................................18

II.    HUD Will Not Suffer Irreparable Harm Absent a Stay .................18

III.   A Stay Would Harm Plaintiffs and the Public Interest...................19

Conclusion ..............................................................................................20

Certificate of Compliance

Certificate of Service

Plaintiffs' Appendix

**TABLE OF AUTHORITIES**

**CASES**

*Arpaio v. Obama*, 27 F. Supp. 3d 185 (D.D.C. 2014)................................19

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10
(1st Cir. 2008) ........................................................................ 12, 15

*Doe 2 v. Shanahan,* 755 Fed. App'x 19 (D.C. Cir. 2019) .......................12

*Doe v. Trump,* 157 F.4th 36 (1st Cir. 2025), *pet. for cert. pending*, No. 25-
899 ........................................................................................18

*Goodwin v. C.N.J., Inc.*, 436 F.3d 44 (1st Cir. 2005)...............................16

*Hoult v. Hoult*, 373 F.3d 47 (1st Cir. 2004)..................................... 12, 14

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025).................................19

*Nken v. Holder*, 556 U.S. 418 (2009).................................................11

*Respect Maine PAC v. McKee*, 622 F.3d 13 (1st Cir. 2010)...................20

*Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304 (1st Cir.
2025)......................................................................................19

*Rhode Island v. Trump*, 155 F.4th 35 (1st Cir. 2025)............................11

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000)..................................12

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........................................18

**STATUTES**

42 U.S.C.
    § 11360................................................................................4
    § 11381................................................................................4
    § 11382..............................................................................5, 6
    § 11383................................................................................4

§ 11386b.........................................................................................................5, 6
§ 11386c............................................................................................................5

Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25
(2024)...............................................................................................................5

Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat.
173 (2026) ................................................................ 9, 10, 13, 14, 17

**OTHER AUTHORITIES**

HUD, *Biden-Harris Administration Awards nearly $3.6 Billion in
Homelessness Assistance Funding to Communities Nationwide* (Jan. 17,
2025), https://perma.cc/J9N4-83DM...................................................................4

**INTRODUCTION**

This case arises from the Administration's recent actions that have massively disrupted the Continuum of Care (CoC) program, the federal government's primary response to homelessness. The CoC program provides billions of dollars each year to help nonprofits, local governments, and states provide housing and other critical support to hundreds of thousands of currently and formerly unhoused individuals and families. A cornerstone of the program is permanent housing, for which stability, of course, is key. Yet Defendants now request a stay that would undermine that essential stability—based on a distorted reading of a recent enactment in which Congress sought to *preserve* stability in the CoC program. The Court should reject that gambit.

Last November, Defendants the Department of Housing and Urban Development and its Secretary (collectively, HUD) threw the CoC program into chaos. Months after the statutory deadline for publishing a new notice of funding opportunity (NOFO) for fiscal year (FY) 2025, HUD rescinded and replaced the existing two-year NOFO that HUD had adopted to govern awards for both FY 2024 and FY 2025. The replacement NOFO included radical new and unlawful criteria that would have destabilized the nation's homelessness response system and forced tens of thousands of people back into homelessness. Plaintiffs sued, and on December 19, 2025, the district court granted preliminary relief blocking HUD

1

from implementing the new NOFO and its challenged conditions for FY 2025. As the district court explained, it was likely unlawful for HUD to use a new NOFO at that late stage at all, and in any event, the new NOFO's radical new criteria were likely unlawful in their own right for multiple reasons.

Later that night, HUD issued yet another new NOFO for FY 2025 (the December 2025 NOFO). In addition to suffering from the same timing defect as the first new NOFO, the December 2025 NOFO largely included the same unlawful provisions that the court had preliminarily enjoined HUD from implementing. Given the court's order, HUD has not implemented that NOFO. HUD never appealed the order granting preliminary relief, and the basis for that order is accordingly beyond the scope of this appeal.

Nonetheless, HUD now seeks an emergency stay of that preliminary relief from this Court, via an appeal from the denial of its motion to dissolve the preliminary relief. HUD's sole basis for belatedly seeking to undo the preliminary relief is a provision of an appropriations bill that Congress enacted on February 3, 2026, that HUD claims changes the game. It does not.

To foster stability for the program, the new law requires HUD to non-competitively renew all existing awards that expire in the first quarter of 2026. And if HUD does not award remaining funds under a fiscal year 2025 NOFO by specified dates, it must non-competitively renew later-expiring awards as well.

Contrary to HUD's contentions, this new law does not bless HUD's using its new NOFO to make FY 2025 awards. Rather, the new law says nothing about *which* NOFO HUD can permissibly use—and does not disturb the district court's (correct and, at this point, unappealable) conclusion that, by November, it was likely too late for HUD to lawfully use any NOFO for FY 2025 other than the original NOFO that covered both FY 2024 and FY 2025. Nor does the law cast doubt on the district court's independent (and, again, correct and at this point unappealable) conclusion that the provisions of HUD's initial new NOFO—provisions that the agency largely retained in the December 2025 NOFO that HUD now seeks to use—are likely unlawful as well.

Contrary to HUD's out-of-touch contentions, moreover, preliminary relief remains necessary to protect Plaintiffs from irreparable harm, as the district court correctly found in denying HUD's motion to dissolve. If HUD were permitted to move forward with its preferred NOFO now, Plaintiffs would immediately have to brace for funding losses for their existing projects, including by preparing to evict tenants, freezing waitlists, and winding down contracts with landlords and other important partners—all the while losing hard-won trust among the communities they serve. And the application process that HUD contemplates would itself cause irreparable harm to Plaintiffs and their members, who, if they could even manage to apply at all, would be forced to divert resources from serving their clients

toward pulling together applications in an unprecedently compressed timeframe, in accordance with unprecedented new criteria, and in an unprecedented partial-year context that creates many unanswered questions.

Preliminary relief continues to protect Plaintiffs and the communities they serve—including tens of thousands of people who rely on the program to remain housed—from devastating harm that HUD's destabilizing actions would cause, and the district court did not abuse its discretion in declining to dissolve that relief. At the same time, with the preliminary relief remaining in place, HUD loses nothing more than the chance to carry out an unlawful plan. And, at bottom, HUD seeks a stay to avoid having to follow the process for renewals set out in the recently enacted appropriations law. While following that process may not be Defendants' preference, they cannot claim that they or the public interest suffer harm from carrying out Congress's mandate. The Court should deny HUD's motion for a stay.

**STATEMENT**

1. Congress created the CoC program to "promote community-wide commitment to the goal of ending homelessness." 42 U.S.C. § 11381(1). Now the largest federal grant program addressing homelessness, the CoC program funds housing and other services that support hundreds of thousands of individuals and families. 42 U.S.C. §§ 11360(29), 11383; *see also* HUD, *Biden-Harris Administration Awards nearly $3.6 Billion in Homelessness Assistance Funding to*

*Communities Nationwide* (Jan. 17, 2025), https://perma.cc/J9N4-83DM. To ensure stability for the currently and formerly unhoused people that the CoC program supports, Congress has long prioritized permanent housing and renewals of effective programs. *See, e.g.*, 42 U.S.C. § 11386c(b) (mandating that appropriated funds "shall be available for the renewal" of permanent housing projects); *id.* § 11386a(b)(2)(B) (providing that each geographic area's annual "estimated grant amount" must be at least the amount needed "to provide 1 year of renewal funding for all expiring" awards); *id.* § 11386b(d) (requiring HUD to incentivize permanent housing strategies that Congress determined had proven effective); *id.* § 11382(f) (ensuring that permanent housing renewal awards keep pace with "increases in the fair market rents").

In 2024, to provide even greater stability, Congress authorized HUD to issue a two-year notice of funding opportunity (NOFO) that would cover both FY 2024 and FY 2025. Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, div. F, tit. II, § 242, 138 Stat. 25, 386. With that two-year NOFO, HUD could run one competition and use the results to make awards for FY 2024 and then, once Congress appropriated funding, for FY 2025 as well. Administrative Record (AR) 31.[1] Communities would also have an opportunity under the two-year NOFO to

---

[1] The administrative record is available at ECF Nos. 44, 56-2, and 59 on the district court docket.

submit new applications for FY 2025 to seek renewals of older projects (that had not been eligible for consideration in FY 2024) or to swap in new projects. AR 31. But the second-year application process would be much more streamlined and funding even more predictable. Pursuant to that authority, in 2024, HUD issued a two-year NOFO for FY 2024 and FY 2025, made FY 2024 awards last January, and would have made FY 2025 awards no later than January 2026. AR 27-155; ECF No. 7-1 ¶¶ 57, 67, 73.

2. But in mid-November 2025, HUD abruptly changed course. Even though the statutory deadline for issuing a new NOFO had expired in June, 42 U.S.C. § 11382(b), HUD rescinded and replaced the two-year NOFO just weeks before FY 2024 awards would begin expiring and FY 2025 awards should have gone out. AR 170; ECF No. 49-1 ¶ 27; ECF No. 7-1 ¶¶ 57, 73. The new NOFO made radical changes to the CoC program, including imposing an unlawful cap on funding for permanent housing, despite Congress having identified permanent housing as the only proven solution to homelessness and despite the devastating consequences that capping funding would have for the people who would lose their homes as a result. *See, e.g.*, AR 170; 42 U.S.C. § 11386b(d)(2); ECF No. 7-1 ¶ 7.

Communities scrambled to respond to that new NOFO—devoting substantial time and money to the process—and braced for funding gaps that some would not be able to bridge. *E.g.*, ECF No. 49-1 ¶ 21; ECF No. 67-3 ¶ 7. Given the

6

new NOFO's dramatic cuts to permanent housing and the resulting uncertainty, many providers had to warn tenants they would soon lose their homes and stopped accepting new referrals for housing assistance, partnering landlords refused to renew beneficiaries' leases, and some providers even closed their doors. ECF No. 75-1 ¶¶ 25, 60-73; ECF No. 49-1 ¶¶ 24, 26-28; ECF No. 67-3 ¶ 7.

3. Plaintiffs—two national membership associations, other nonprofits, and local governments—brought suit, as did a coalition of states in a separate case before the same court. *State of Washington v. HUD*, No. 25-626 (D.R.I.). Plaintiffs claimed that HUD's new NOFO was unlawful for two separate categories of reasons. First, it was illegal for HUD to rescind the two-year NOFO and replace it with a new one at all—both because the statutory deadline for issuing a new NOFO had passed and because it was arbitrary and capricious under the Administrative Procedure Act to replace the existing NOFO so late in the year given the major funding delays, disruption, and other harm that would result. ECF No. 1 ¶¶ 174-186. Second, even apart from its untimely issuance, the new NOFO is unlawful for a host of different reasons, including that it exceeds Defendants' statutory authority and violates binding statutes and regulations, the Constitution, the APA's requirement for reasoned decision-making, and a requirement to undertake notice and comment. ECF No. 1 ¶¶ 187-251.

Plaintiffs promptly sought preliminary relief. Just hours before the hearing on Plaintiffs' motion, HUD withdrew the new NOFO and said it would issue yet another new one. ECF No. 39. Following briefing and another hearing, the Court orally granted preliminary relief on December 19 and memorialized that ruling in a written order entered on December 23. App. 80 (Min. Entry of Dec. 19, 2025); App. 40.

The Court explained that HUD's last-minute withdrawal of the new NOFO did not moot Plaintiffs' claims, particularly given that HUD "expressly reserve[d] the right to re-issue the same or similar conditions." Pls.' App. 5. It further held that the "rescission of the two-year NOFO" and replacement with a new NOFO conflicted with "statutory mandates …, including Congress's prioritization of permanent housing and renewal stability" and "the statutory deadline for issuance of a NOFO." Pls.' App. 6. And it concluded that Plaintiffs had "shown serious questions under the APA both substantively and procedurally, including unexplained departures from longstanding policy, failure to consider reliance interests, and adoption of sweeping new grant conditions without required notice and comment." *Id.* The Court also held that the other factors favored preliminary relief as well. Pls.' App. 6-7. The Court accordingly enjoined both the rescission of the two-year NOFO and the new NOFO "and its conditions." Pls.' App. 7; *see also* App. 40-41.

HUD never appealed that order.

4. The same night that the Court orally granted preliminary relief, HUD issued yet another new NOFO for FY 2025 (the December 2025 NOFO) that for the most part retained the same unlawful criteria and conditions that would strip funding from existing projects. AR 1133-1269. HUD stated that it would not implement that NOFO given the preliminary injunction. AR 1137-38.

The parties proceeded to file cross-motions for summary judgment on an expedited basis, with briefing concluding on February 6. Given that existing awards were already expiring, Plaintiffs requested that the Court rule as quickly as possible and order Defendants to promptly make awards under the original two-year NOFO. ECF No. 67-1 at 46-47.

5. On February 3, Congress enacted and the President signed the Consolidated Appropriations Act, 2026 (2026 Appropriations Act). Pub. L. No. 119-75, 140 Stat. 173. The Act provides new instructions for FY 2025 CoC funding to return some stability to the CoC program in the face of the chaos HUD had caused. In particular, the Act requires HUD, "prior to awarding any amounts through a notice of funding opportunity," to non-competitively renew for one year all CoC grants that are expiring or have expired in the first quarter of 2026 (*i.e.*, between January 1, 2026 and March 31, 2026). Pub. L. No. 119-75, div. D, tit. II, § 244, 140 Stat. at 422. The Act also requires HUD to non-competitively renew

later-expiring grants "if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to" set dates—April 1 for grants expiring in the second quarter of 2026 and July 1 for grants expiring in the third and fourth quarters. *Id.* The 2026 Appropriations Act did not otherwise change the law governing the CoC program for FY 2025, and it did not specify one way or the other what NOFO HUD could permissibly use to make awards "under a fiscal year 2025 [NOFO]" in lieu of non-competitively renewing projects. *See id.*

After conferring with Defendants, Plaintiffs informed the district court by email that they no longer sought an expedited ruling on their summary judgment motion, but that HUD maintained that expedition was still warranted. The cross-motions for summary judgment remain pending.

6. Six days later, and two weeks after the 2026 Appropriations Act was signed, HUD moved to dissolve the order granting preliminary relief based on that new law. ECF No. 74. HUD claimed it needed to start accepting applications by April 1 "to have any chance" of making awards under its preferred December 2025 NOFO by July 1. *Id.* at 1. It accordingly sought an expedited decision. *Id.* at 3-4.

On February 27, the district court denied that motion. App. 50-51. The court explicitly rejected HUD's argument that the 2026 Appropriations Act "eliminated the threatened harms faced by the Plaintiffs" and held that "Plaintiffs continue to face imminent, irreparable harm," including from "the upheaval and service gaps

that would result from the Defendants['] attempt to vastly overhaul the funding selection criteria on an accelerated basis." App. 50.

A few days later, HUD appealed the denial of its motion to dissolve and moved the district court to stay the preliminary relief pending appeal. ECF Nos. 78, 79. The district court denied the stay motion, again reiterating that a stay would "substantially injure Plaintiffs by subjecting them" to the "upheaval" the Court had previously noted. App. 56-57.

HUD filed an emergency stay motion in this Court, requesting a decision by March 30.

## LEGAL STANDARD

Appellants seeking a stay pending appeal "bear the burden" to establish that the "now-familiar four factors set forth in *Nken*" favor such "extraordinary relief." *Rhode Island v. Trump*, 155 F.4th 35, 41 (1st Cir. 2025) (quotations omitted). Those factors are (1) whether the appellant "has made a strong showing" that it "is likely to succeed on the merits"; (2) whether the appellant "will be irreparably injured absent a stay"; (3) whether a stay "will substantially injure the other parties"; and (4) "the public interest." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## ARGUMENT

HUD cannot meet any of the factors needed to obtain a stay pending appeal. HUD is unlikely to succeed on the merits; it has not shown it will be irreparably

injured absent a stay; and a stay would substantially injure Plaintiffs and their members, as well as the public interest.

## I.     HUD Is Unlikely To Succeed on Appeal

HUD is not likely to succeed in this appeal from the denial of its motion to dissolve the preliminary relief. This Court reviews such a decision "for abuse of discretion." *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 15 (1st Cir. 2008). Findings of fact are reviewed for clear error and conclusions of law de novo. *Id.* at 16. Importantly, review of such a denial "does not extend to the propriety of the original order." *Hoult v. Hoult*, 373 F.3d 47, 53 (1st Cir. 2004) (quotations omitted). Rather, the Court looks only to whether the movant has "establish[ed] that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *accord, e.g.*, *Doe 2 v. Shanahan*, 755 Fed. App'x 19, 22-23 (D.C. Cir. 2019) (collecting cases).

No change in facts or law warrants dissolution of the injunction here—and the district court did not abuse its discretion in denying HUD's motion to dissolve. While HUD claims that the recently enacted 2026 Appropriations Act undermines the propriety of preliminary relief, it is wrong. The Act does not undercut Plaintiffs' likelihood of success on the merits, eliminate Plaintiffs' irreparable

harm, or otherwise shift the balance of the equities, and the preliminary relief remains just as appropriate now as it was before.

### A. The 2026 Appropriations Act does not undermine Plaintiffs' likelihood of success

Nothing in the 2026 Appropriations Act changes the fact that Plaintiffs are likely to succeed on their claims both (1) that it is unlawful at this late stage for HUD to rescind and replace the two-year NOFO at all and (2) that the replacement NOFO that HUD seeks to implement is independently unlawful for myriad reasons.

On the first set of claims, HUD errs in contending (at 10) that the 2026 Appropriations Act "confirm[s] that HUD has the authority and flexibility to modify or rescind the two-year [FY 2024-2025] NOFO and to issue a [new] NOFO for 2025." The Act provides that HUD can make awards "under a fiscal year 2025 notice of funding opportunity," but it does not put a thumb on the scale as to which fiscal year 2025 NOFO HUD may use or imply that it was permissible for HUD to use a *new* fiscal year 2025 NOFO, as opposed to the two-year NOFO covering both fiscal years 2024 and 2025.[2] *See* Pub. L. No. 119-75, div. D, § 244, 140 Stat. at 422. The Appropriations Act is silent as to *which* "fiscal year 2025 [NOFO]"

---

[2] HUD relatedly misses the mark in claiming (at 10) that the preliminary injunction improperly "forbids HUD from giving effect to any 2025 NOFO." The two-year NOFO covering fiscal years 2024 and 2025 *is* a fiscal year 2025 NOFO, and the district court's order permits HUD to make awards under that.

HUD could use. *Id.* If Congress had wanted to authorize HUD to use a new NOFO for FY 2025, it could have said so expressly. But it did not. Instead, on that point, Congress left its preexisting laws in place—including the statutory deadline for issuing a new FY 2025 NOFO and the APA's requirement for reasoned decision-making—leaving it open for the courts to decide what NOFO HUD could lawfully use under those laws. HUD does not engage with this point—and offers nothing beyond ipse dixit to claim that the 2026 Appropriations Act blessed using a new NOFO.

At bottom, the Act provided no reason for the district court to revisit its earlier conclusion that it was likely unlawful for HUD to rescind the two-year NOFO so late and to use a new NOFO for FY 2025 instead. And HUD cannot challenge that earlier conclusion in this appeal. *See Hoult*, 373 F.3d at 53 (appeal of denial of motion to revisit preliminary injunction "does not extend to the propriety of the original order" (quotations omitted)).

Plaintiffs also remain likely to succeed on their second set of claims—that, even apart from its untimely issuance, the December 2025 NOFO is unlawful for a host of reasons. HUD protests (at 10) that the district court did not "adjudicate[] the lawfulness" of that NOFO. But the December 2025 NOFO closely resembles the new NOFO that HUD issued in November, which the Court rightly concluded was likely unlawful. *See* ECF No. 67-2 (comparing November and December

NOFO provisions); Pls.' App. 6. The December 2025 NOFO is unlawful for largely the same reasons, including that it "conflicts with the statutory mandates of the McKinney Vento Act, including Congress's prioritization of permanent housing and renewal stability," and impermissibly adopts "sweeping" new criteria "without required notice and comment." Pls' App. 6. More to the point, HUD did not appeal the district court's order preliminarily enjoining the "Challenged Conditions" of the November 2025 NOFO, App. 41, so it cannot now complain that the order continues to bar it from implementing many of the same conditions in the December 2025 NOFO.

### B. The 2026 Appropriations Act does not resolve Plaintiffs' irreparable harm

Plaintiffs also still face irreparable harm even though the 2026 Appropriations Act effectively requires awards expiring in the first half of 2026 to be non-competitively renewed. As the district court held in denying the motion to dissolve, Plaintiffs continue to face irreparable harm from "the upheaval" that HUD's "attempt to vastly overhaul the funding selection criteria on an accelerated basis" would cause. App. 50. That conclusion was correct—and Defendants certainly have not met their burden to show that conclusion was "clear error" subject to reversal. *See Concilio de Salud*, 551 F.3d at 16.

For one, implementing the December 2025 NOFO would undisputedly result in established projects abruptly losing funding—which in turn would force

programs to shut down, undermine Plaintiffs' missions, and erode the hard-earned trust Plaintiffs have built among critical service partners and the vulnerable communities they serve. *E.g.*, ECF No. 75-1 ¶¶ 55, 60; ECF No. 49-1 ¶¶ 24, 26. HUD claims (at 12) that this is not sufficiently "immediate" because affected programs will not run out of funding before July. But that looming loss of funding would irreparably harm Plaintiffs and their members *now*—including because many would need to prepare for that loss immediately, by warning tenants that they will lose their housing, halting new referrals, cutting off waiting lists, and winding down partnerships with landlords and other service providers. *See, e.g.*, ECF No. 49-1 ¶¶ 16, 24; ECF No. 67-3 ¶ 7; ECF No. 75-1 ¶¶ 59, 62-64, 67-70.

Nor is there any merit to HUD's suggestion (at 13) that it should at least be "allow[ed] … to invite applications under the new NOFO," even if it could not actually make awards. It did not seek such relief from the district court (and instead sought only wholesale dissolution of the preliminary relief), ECF No. 74, so any request for a more limited modification is waived. *See Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2005).

In any event, even allowing HUD to invite applications under the December 2025 NOFO would cause Plaintiffs and their members irreparable harm. As Plaintiffs detailed in their district court filings, opening the December 2025 NOFO would cause further chaos and force Plaintiffs and their members to divert scarce

resources to an unprecedented and confusing application process and away from running their programs. ECF No. 75 at 14-18. Responding to a NOFO is a demanding endeavor in normal circumstances. *See* ECF No. 75-1 ¶¶ 47-49; ECF No. 49-1 ¶ 21 (describing how some members spent tens of thousands of dollars and hundreds of staff hours responding to the November 2025 NOFO before HUD withdrew it). But the burden of responding to the December 2025 NOFO at this juncture would be off the charts—as Plaintiffs would have to revamp programs to satisfy radically new criteria and funding priorities, run required local competitions and prepare applications in an unrealistically abbreviated application window, and navigate an unprecedented partial-year funding process that raises many unanswered questions. ECF No. 75-1 ¶¶ 36-49. Compounding the difficulties, HUD must launch the application for next year's funding by June 1. Pub. L. No. 119-75, div. D, tit. II, 140 Stat. at 400. Given the tremendous resources that applying entails, many of Plaintiff NAEH's members report that they lack the capacity to handle such an unprecedented back-to-back application process. ECF No. 75-1 ¶¶ 40-43.

If HUD were permitted to implement its preferred NOFO, Plaintiffs would still suffer these harms—and the preliminary relief is still needed.

**C.     The 2026 Appropriations Act does not shift the balance of equities**

To the extent HUD suggests that the 2026 Appropriations Act changes the balance of equities, it is again mistaken. HUD emphasizes (at 14-15) that, with the preliminary relief in place, it will not be able to implement its preferred December 2025 NOFO. But the government "is not irreparably harmed" by such an order "that bars enforcement of an unlawful" executive action. *Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025), *pet. for cert. pending*, No. 25-899.

The 2026 Appropriations Act does not undercut any of the factors supporting preliminary relief, and HUD is unlikely to succeed on its appeal. HUD's failure to meet its burden on this factor is reason alone to deny its requested stay.

## II.  HUD Will Not Suffer Irreparable Harm Absent a Stay

A stay is also unwarranted for the independent reason that HUD has not met its burden to demonstrate that a stay will protect it from irreparable harm. HUD claims that it faces harm because the preliminary order bars it from "effectuating statutes enacted by representatives of its people." *See* Mot. at 14 (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 860-61 (2025)). But that is mistaken. As the district court held, HUD was likely violating statutes, not effectuating them, in implementing its new NOFO for FY 2025. Pls.' App. 6. And, again, HUD faces no harm from an order "bar[ring] enforcement of an unlawful" NOFO. *See Doe*, 157 F.4th at 79.

18

In addition, even if not being able to make awards under its preferred NOFO were cognizable harm, HUD bears the "burden of demonstrating that it *will*" face that harm "absent a stay." *See Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304, 316 (1st Cir. 2025) (quotations omitted) (emphasis in original). It has not met that burden. As Plaintiffs' district-court papers explained in detail, HUD cannot at this stage realistically make awards under its preferred NOFO even if the preliminary relief were stayed. *See* ECF No. 75 at 19-21; ECF No. 75-1 ¶¶ 45-47, 50-52. HUD has never responded to those points. The most HUD has offered is a bare statement that HUD could "have a chance" of making awards before July 1 if the preliminary relief were stayed. App. 48. But that is just the sort of "speculative and conclusory statement" that cannot "demonstrat[e] that [Defendants] *will* be irreparably injured absent a stay." *See New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025) (quotations omitted) (emphasis in original); *cf. also Arpaio v. Obama*, 27 F. Supp. 3d 185, 207 (D.D.C. 2014) (explaining that a party does not meet the "irreparable harm" requirement if the requested relief would not prevent the harm).

## III. A Stay Would Harm Plaintiffs and the Public Interest

Finally, a stay is also unwarranted because it would substantially injure Plaintiffs, their members, and the public interest. Plaintiffs and the communities they serve face serious irreparable harm from the upheaval of the CoC program

that the December 2025 NOFO would cause, and from the tremendous drain of resources they would suffer just from applying under the December 2025 NOFO. *See supra* Section I.b. Added chaos and uncertainty in the CoC program would harm the public interest as well. *See Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010) (noting that "chaos" would cause "harm to the public interest"). That harm is particularly acute given that allowing HUD to proceed with the December 2025 NOFO would threaten to throw tens of thousands of individuals and families back into homelessness, subjecting them to trauma, undermining gains in treatment and other services, and eroding hard-won trust in the system. ECF No. 75-1 ¶ 7, 55; ECF No. 67-3 ¶ 7.

## CONCLUSION

The Court should deny the motion to stay.

March 16, 2026

Respectfully submitted,

<u>/s/ Kristin Bateman</u>

Amy R. Romero
Kevin Love Hubbard
DeLuca, Weizenbaum,
 Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
amy@dwbrlaw.com
kevin@dwbrlaw.com
  Cooperating counsel, Lawyers'
  Committee for RI

*Counsel for All Plaintiffs*

Kristin Bateman
Madeline H. Gitomer
Aleshadye Getachew
Aman T. George
Simon C. Brewer
Christine L. Coogle
Yenisey Rodríguez
Carrie Y. Flaxman
Robin Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Tony LoPresti
  County Counsel
Kavita Narayan
  Chief Assistant County Counsel
Meredith A. Johnson
  Lead Deputy County Counsel
Stefanie Wilson
  Deputy County Counsel
Leily Arzy
  Litigation Fellow
70 West Hedding Street, East Wing
Ninth Floor
San José, CA 95110-1770
(408) 299-5900
meredith.johnson@cco.sccgov.org
stefanie.wilson@cco.sccgov.org
leily.arzy@cco.sccgov.org

*Counsel for Plaintiff County of Santa Clara*

David Chiu
  City Attorney
Yvonne R. Meré
  Chief Deputy City Attorney
Mollie M. Lee
  Chief of Strategic Advocacy
Sara J. Eisenberg
  Chief of Complex and Affirmative
  Litigation
Ronald H. Lee
  Asst. Chief of Complex and
  Affirmative Litigation
Michael Levin Gesundheit
  Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
(415) 554-4240
michael.levin@sfcityatty.org

kbateman@democracyforward.org
mgitomer@democracyforward.org
agetachew@democracyforward.org
ageorge@democracyforward.org
sbrewer@democracyforward.org
ccoogle@democracyforward.org
yenisey.rodriguez@democracyforward.
org
cflaxman@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs National Alliance to End Homelessness, National Low Income Housing Coalition, Crossroads RI, and Youth Pride, Inc.*

Lynette Labinger
128 Dorrance Street, Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
  Cooperating counsel, ACLU
  Foundation of RI

*Counsel for Plaintiffs National Alliance to End Homelessness, National Low Income Housing Coalition, Crossroads RI, and Youth Pride, Inc.*

Antonia K. Fasanelli
Kathryn M. Scott*
National Homelessness Law Center
1400 16th Street, NW, Suite 425
Washington, DC 20036
(202) 638-2535
afasanelli@homelesslaw.org
kmeyerscott@homelesslaw.org

*Counsel for Plaintiffs National Alliance to End Homelessness and*

21

*Counsel for Plaintiff City and County of San Francisco*

Wallace W. Dietz
  Director of Law
John K. Whitaker
  Senior Counsel
Abby Greer
  Assistant Metropolitan Attorney
109 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
(615) 862-6341
wally.dietz@nashville.gov
john.whitaker@nashville.gov
abby.greer@nashville.gov

*Counsel for Plaintiff Metropolitan Government of Nashville and Davidson County*

David J. Hackett
  General Counsel, King County
  Department of Local Services
Christopher M. Sanders
  General Counsel to the King County
  Executive
Cristy J. Craig
  Senior Deputy Prosecuting Attorney
  Office of the King County
  Prosecuting Attorney
401 5th Avenue, Suite 600
Seattle, WA 98104
(206) 477-1163
david.hackett@kingcounty.gov
chrsanders@kingcounty.gov
cristy.craig@kingcounty.gov

*Counsel for Plaintiff Martin Luther King, Jr. County*

*National Low Income Housing Coalition*

Toby Merrill
Cassandra Crawford
Graham Provost
Kayla Svihovec
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
toby@publicrightsproject.org
cassandra@publicrightsproject.org
graham@publicrightsproject.org
kayla.svihovec@publicrightsproject.org

*Counsel for Plaintiffs City of Boston, City of Cambridge, Martin Luther King, Jr. County, Metropolitan Government of Nashville and Davidson County, City of Tucson*

\* Not admitted in the District of Columbia; practicing under the supervision of members of the D.C. Bar

22

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the forgoing Opposition complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,607 words. The opposition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6); it has been prepared using Microsoft Word in proportionally spaced 14-point Times New Roman typeface.


/s/ Kristin Bateman
Kristin Bateman

## CERTIFICATE OF SERVICE

I certify that on March 16, 2026, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Kristin Bateman
Kristin Bateman

# PLAINTIFFS' APPENDIX

Transcript of Hearing on Motions for Preliminary Injunctions
(Dec. 19, 2025) (Excerpts)...................................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * * * * * *25-CV-636-MSM
                                *
NATIONAL ALLIANCE TO END        *
HOMELESSNESS, et al             *
            Plaintiffs,         *
                                *
         VS.                    *
                                *
UNITED STATE DEPARTMENT OF      *
HOUSING AND URBAN               *DECEMBER 19, 2025
DEVELOPMENT, et al              *
            Defendants.         *
                                *
* * * * * * * * * * * * *       *
                                *
STATE OF WASHINGTON, et al,     *
            Plaintiffs,         *
                                *
         VS.                    *25-CV-626-MSM
                                *
UNITED STATES DEPARTMENT OF     *
HOUSING AND URBAN               *
DEVELOPMENT, et al              *
            Defendants.         *VIA VIDEO CONFERENCE
*****************************    *PROVIDENCE, RI
```

BEFORE THE HONORABLE MARY S. McELROY

DISTRICT JUDGE

(MOTIONS FOR PRELIMINARY INJUNCTIONS)

Pls.' App. 1

**APPEARANCES:**

FOR THE PLAINTIFFS:

State of Washington      Zane Muller
Washington State Attorney
General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100

National Alliance to      Kristin Bateman, Esq.
End Homelessness      Democracy Forward Foundation
PO Box 34553
Washington, DC 20043

FOR THE DEFENDANTS:

U.S. Department of Housing JOHN BAILEY,, DOJ-Civ
and Urban Development    U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530

Court Reporter:      Denise P. Veitch, RPR
One Exchange Terrace
Providence, RI  02903

VIA VIDEO CONFERENCE

19 DECEMBER 2025 --

THE COURT: Good morning. We are going to go on the record in two civil actions combined, it's civil action 25-525, I'm sorry, 26, and 25-636, the United States -- National Alliance to End Homelessness versus the Department of Housing and Urban Development, and then the other case which we have titled the State of Washington versus the Department of Housing and Urban Development. And I want to make sure I said those numbers correctly because I didn't put my glasses on yet. It is 25-626 and 25-636.

So, good morning. We are on the record, so I just remind everybody that the stenographer is taking a transcript and so it's important that you remember that when you're speaking. I find that people tend to speak more quickly when they're on Zoom probably in part because they are reading some of what they're saying; so I would appreciate it and I think you will appreciate it if you slow down. I don't want to have to interrupt you to tell you to slow down; if I do it is not because I'm mad but just because the stenographer will need the time.

Okay. So who is appearing for the Plaintiffs at this hearing? Will you identify yourselves for the

issue -- I mean I am definitely going to issue a written ruling. The question is whether I'm going to give you a verbal ruling first. And the problem here is the anticipated NOFO because if that NOFO wasn't, you know, was something we knew about what was coming -- and Mr. Bailey, this has nothing to do with you. Please know that I don't think that you're somehow, you know, withholding this. But I think it's intentionally being withheld until after this hearing because, you know, I criticized the agency for withdrawing the last one right before the last hearing maybe, but also I think in order to sort of, you know, evade court jurisdiction.

So we're going to take a five-minute recess, and I will be back.

(Recess)

THE CLERK: All set, Judge.

THE COURT: Okay. Thank you.

Okay. This is not one of, you know, it's not an easy case and it is made a little more speculative by not knowing what the agency intends to do today. Mr. Bailey, to be clear, that's not on you at all.

So the matter is before the Court on the motions for temporary restraining orders and preliminary injunctions in State of Washington versus HUD, and the

National Alliance to End Homelessness versus HUD, and the motions were converted into preliminary injunction motions; they were TROs.

So a request for a preliminary injunction is a request for extraordinary relief. Everybody, every court to address it says it. To secure a preliminary injunction, a plaintiff has to show a substantial likelihood of success on the merits, a significant risk of irreparable harm if the injunction is withheld, a favorable balance of the hardship, and that the injunction is in the public interest. Here, as in these cases with the government, where the government is the opposing party, the last two issues merge.

So preliminarily I reject the Defendants' contention that these cases are moot based on its rescission of the fiscal year 2025 NOFO. This is sort of a classic voluntary cessation scenario, and the Defendants have a heavy burden of showing that the challenged conduct cannot reasonably be expected to reoccur. And they have not only not met that burden, but, to the contrary, they expressly reserve the right to re-issue the same or similar conditions, and so I find that concession defeats mootness and effective relief remains available at least for the issues that are live.

So the Plaintiffs in both actions have demonstrated a likelihood of success on the merits, and at this stage the record plausibly shows that HUD's rescission of the two-year NOFO and issuance of the 2025 NOFO conflicts with the statutory mandates of the McKinney Vento Act, including Congress's prioritization of permanent housing and renewal stability and the formula-based allocations scheme, as well as the statutory deadline for issuance of a NOFO.

The Plaintiffs have shown serious questions under the APA both substantively and procedurally, including unexplained departures from longstanding policy, failure to consider reliance interests, and adoption of sweeping new grant conditions without required notice and comment.

The Plaintiffs have further established irreparable harm. The withdrawal of the operative NOFO and the delayed and conditional replacement guarantee funding gaps, and these are concrete, imminent harms that cannot be remedied by money damages; so the rescission sort of exacerbates rather than alleviates those harms. And I think it's noted that we don't know what the agency intends to do, although we know they intend to do it today.

The balance of the equities and the public

interest strongly favor temporary relief, and the Plaintiffs seek to preserve the status quo Congress authorized and on which states, local governments, and service providers have relied.

So they haven't, the Defendants haven't identified a comparable framework from maintaining -- a hardship for the government for maintaining that framework for the short period while the Court adjudicates the merits, or, the agency lawfully issues a NOFO that complies with the statutes, the law, and this Court's orders. Ensuring lawful agency action, continuity of housing, and stability for vulnerable populations is clearly in the public interest.

So the motions for preliminary injunction in 25-626 and 25-636 are granted. The Defendants are enjoined from implementing or enforcing the fiscal year 2025 NOFO and its conditions. And I realize that it's been withdrawn, but it's important to note that the government has not engaged with or challenged or supported the legality of those conditions and the prior fiscal -- the important thing is the Court is enjoining the rescission of the 2024-25 NOFO, and that will remain in effect pending agency action consistent with the law and this Court's rulings.

And so I'm going to follow this with a written

order but -- and I'm asking the Plaintiffs to provided the Court and opposing counsel with proposed language specifically stating the terms of the preliminary injunction.

So the 2024 rescission is enjoined. It is -- the agency is ordered to maintain status quo unless and until a lawful order, a lawful NOFO consistent with law and this Court's order is substituted.

Okay. So we'll get something in writing out to you early next week. As soon as there's a new NOFO, I would like the parties to consult with each other to determine whether or not that ends this case; and if it is agreed that it does, then let the Court know. And if it doesn't, provide a copy of the new NOFO to the Court as soon as it issues, okay?

MR. MULLER: Yes, your Honor.

THE COURT: Okay. Is there anything further for this hearing?

MR. BAILEY: Not from the government, no.

THE COURT: Okay. And we will issue a written order, but it may become not necessary depending on what the new NOFO that we're expecting today does, so we'll have to address that. But if everybody just gets me the language they want, then we can at least look at it over the weekend and determine whether or not that's

necessary, okay?

MR. BAILEY: Yes, your Honor.

THE COURT: Okay.

(Overlapping speech)

THE COURT: I'm sorry?

MR. BAILEY: I apologize. Did you want the government to propose language as well?

THE COURT: You're welcome to propose language if you'd like to, yes, but you could also engage with the Plaintiffs' proposal language and figure it out. I realize that you don't speak for the agency, you're their lawyer, so, you're their litigation counsel, so that might not be possible, but, sure, propose the language you think is appropriate, okay?

All right. Everybody have a good day, a good weekend, Merry Christmas, Happy Hanukkah, Happy New Year. And but get me that stuff as soon as possible, and if we need to issue a written order if it doesn't moot out the case, we'll do that hopefully early next week, okay?

MS. BATEMAN: Thank you, your Honor.

THE COURT: Okay. Thank you.

(Adjourned)

C E R T I F I C A T I O N

I, Denise P. Veitch, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Denise P. Veitch
Denise P. Veitch, RPR
Federal Official Court Reporter

December 27, 2025
Date